Jane and John Doe et al. v. Alternative Medicine Maryland, LLC, et al., No. 98, September Term, 2016

**MARYLAND RULE 2-214(a)(2) – INTERVENTION AS OF RIGHT – MD. CODE ANN., CTS. & JUD. PROC. (1973, 2013 REPL. VOL.) § 3-405(a)(1) – MARYLAND RULE 2-211(a) – MARYLAND RULE 2-214(b) – PERMISSIVE INTERVENTION – REMAND –** Court of Appeals held that petitioner growers, who had been granted pre-approvals for medical cannabis grower licenses, and in one instance a license, by Natalie M. LaPrade Medical Cannabis Commission, were entitled to intervention as of right under Maryland Rule 2-214(a)(2) and, as such, that trial court erred in denying intervention as of right. Court of Appeals determined that petitioner growers were entitled to be made a party under Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) ("CJ") § 3-405(a)(1) and to joinder under Maryland Rule 2-211(a). The trial court also abused its discretion in denying permissive intervention under Maryland Rule 2-214(b), as to petitioner growers. Court of Appeals concluded that trial court did not err or abuse its discretion in denying intervention as of right or permissive intervention as to two patients and two trade associations, and that patients and trade associations were not entitled to be made a party under CJ § 3-405(a)(1). Court of Appeals remanded case to trial court for further proceedings, including determination of issues raised by petitioner growers in motion to dismiss that had been denied as moot, namely, applicability of doctrine of laches, whether action is action for administrative mandamus, *i.e.*, petition for judicial review, which was not timely filed, and if not dismissed, whether complaint for declaratory judgment should be considered petition for judicial review subject to on-the-record review under substantial evidence test.

Circuit Court for Baltimore City
Case No. 24-C-16-005801

Argued: July 27, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 98

September Term, 2016

———————————————————————

JANE AND JOHN DOE ET AL.

v.

ALTERNATIVE MEDICINE MARYLAND,
LLC ET AL.

———————————————————————

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Wilner, Alan M. (Senior Judge,
Specially Assigned),

JJ.

———————————————————————

Opinion by Watts, J.

———————————————————————

Filed: August 25, 2017

This case arises out of a dispute regarding the unique process of pre-approving and licensing medical cannabis growers in Maryland for the first time under Md. Code Ann., Health Gen. (1982, 2015 Repl. Vol.) ("HG") § 13-3301 et seq. In 2013, the General Assembly authorized the Natalie M. LaPrade Medical Cannabis Commission ("the Commission"), Respondent, originally entitled the Natalie M. LaPrade Medical Marijuana Commission, to be responsible for pre-approving and licensing medical cannabis growers in Maryland. See 2013 Md. Laws 3625 (Vol. IV, Ch. 403, H.B. 1101). The General Assembly directed that the Commission would be independent, but would function within the Department of Health and Mental Hygiene ("the Department"),[1] Respondent.[2] See id. at 3623. In 2015, the General Assembly gave the Commission its current name, the Natalie M. LaPrade Medical Cannabis Commission. See 2015 Md. Laws 1164 (Vol. II, Ch. 251, H.B. 490).

The Commission, its members, and the Department were sued by Alternative Medicine Maryland, LLC ("AMM"), Respondent, a business that applied for, but did not receive pre-approval for, a medical cannabis grower license. In a complaint for declaratory judgment and preliminary and permanent injunctive relief, AMM contended that, during the pre-approval process, the Commission failed to follow applicable law with respect to the requirement to consider racial and ethnic diversity, and requested that the Commission

---

[1]As of July 1, 2017, the Department of Health and Mental Hygiene has been renamed the Maryland Department of Health. See 2017 Md. Laws 1583 (Vol. II, Ch. 214, S.B. 82).

[2]Although the Commission and the Department are separate Respondents and have separate counsel, they have acted jointly throughout this case. Accordingly, we will refer to them together as "the Commission."

be prohibited from issuing final approvals for the first group of medical cannabis grower licensees until the Commission took corrective action, consisting of actively seeking racial and ethnic diversity among medical cannabis grower licensees and conducting a study on the existence of discrimination with respect to the medical cannabis statutes. Essentially, AMM requested that the Commission be required to reconduct the pre-approval process.

Notably, this case does not involve resolution of the issue of whether AMM is correct in its contention that the Commission had failed to consider racial and ethnic diversity of potential medical cannabis grower licensees. Instead, we must determine, chief among other issues, whether the Circuit Court for Baltimore City ("the circuit court") erred in denying a motion to intervene that was filed by medical cannabis growers that had received pre-approvals for medical cannabis grower licenses, a coalition and trade association that advocate for the use of medical cannabis, and patients who would potentially receive medical cannabis as treatment for illnesses.

To better understand this case, it is helpful to provide an introductory review of the statutes that govern the pre-approval and licensing of medical cannabis growers, as well as the underlying facts and procedural history of the case. The Commission, a sixteen member body that functions within the Department, HG §§ 13-3302(b), 13-3303(a), is responsible for licensing medical cannabis growers, dispensaries, and processors, HG §§ 13-3306, 13-3307, 13-3309. "The purpose of the Commission is to develop policies, procedures, guidelines, and regulations to implement programs to make medical cannabis available to qualifying patients in a safe and effective manner." HG § 13-3302(c). HG § 13-3306(a)(1) provides that the Commission "shall license medical cannabis growers that

meet all requirements established by the Commission[.]" Currently, "the Commission may license no more than [fifteen] medical cannabis growers." HG § 13-3306(a)(2)(i). Starting on June 1, 2018, "the Commission may issue the number of licenses necessary to meet the demand for medical cannabis[.]" HG § 13-3306(a)(2)(ii). Of particular significance to this case is HG § 13-3306(a)(9)(i), which provides that: "The Commission shall: 1. Actively seek to achieve racial, ethnic, and geographic diversity when licensing medical cannabis growers; and 2. Encourage applicants who qualify as a minority business enterprise, as defined in § 14-301 of the State Finance and Procurement Article."[3] (Paragraph breaks omitted). In other words, HG § 13-3306(a)(9)(i)1 requires that the Commission, in licensing medical cannabis growers, actively seek to achieve racial, ethnic, and geographic diversity.

After HG § 13-3306(a)(9)(i)1 became effective, during the 2015 legislative session, a member of the General Assembly representing Baltimore County, Delegate Christopher R. West, requested that the Office of Counsel to the General Assembly—a division of the

---

[3]Md. Code Ann., State Fin. & Proc. (1985, 2015 Repl. Vol.) ("SF") § 14-301(f) states:

> "Minority business enterprise" means any legal entity, except a joint venture, that is: (1) organized to engage in commercial transactions; (2) at least 51% owned and controlled by 1 or more individuals who are socially and economically disadvantaged; and (3) managed by, and the daily business operations of which are controlled by, one or more of the socially and economically disadvantaged individuals who own it.

(Paragraph breaks omitted). The term "socially and economically disadvantaged individuals" includes, among others, individuals who are women, regardless of race or ethnicity, and/or African-American. See SF § 14-301(k)(1)(i).

Office of the Attorney General—provide advice as to whether HG § 13-3306(a)(9)(i)'s requirement for racial and ethnic diversity was constitutional. In a letter[4] dated March 13, 2015, Assistant Attorney General Kathryn M. Rowe ("Rowe") responded to Delegate West that the legislative history of the medical cannabis statute indicated that, in a bill review letter, the Attorney General of Maryland had previously advised that the statute must be implemented consistent with constitutional provisions described in Richmond v. J.A. Croson Co., 488 U.S. 469 (1989) and Fisher v. Univ. of Tex. at Austin, 133 S. Ct. 2411 (2013). According to Rowe, in Croson, the Supreme Court held that, for a state entity to take action to correct discrimination, there must be a strong basis in evidence of past discrimination at the time a race conscious selection program is established. Rowe advised that, in the area of government contracting, to implement a race- or ethnicity-based selection process, a study is required "showing a significant statistical disparity between the availability of . . . minority subcontractors" and the use of the minority subcontractors by the governmental entity. (Citation and internal quotation marks omitted). Rowe added

---

[4]The letter did not constitute an opinion of the Attorney General. The Attorney General's website explains:

> A formal Opinion of the Attorney General should be distinguished from a letter of legal advice written by an attorney in this office. Because the Office of the Attorney General is the legal adviser to most State agencies, its lawyers write many letters and memoranda each day to State officials analyzing legal issues. Only a letter that has undergone [a] review process . . . and has been adopted by the Attorney General is an Opinion of the Attorney General.

"Frequently Asked Questions About Opinions of the Attorney General," Office of the Attorney General of Maryland, http://www.marylandattorneygeneral.gov/Pages/Opinions/faq.aspx [https://perma.cc/ZBY4-GA5V].

that, in Fisher, the Supreme Court indicated that it would "closely scrutinize a government's justification of a race-conscious program and its evidence in support of that program." Rowe concluded that "[c]onstitutional limits [] would prevent the Commission from conducting race- or ethnicity[-]conscious licensing in the absence of a disparity study showing past discrimination in similar programs."

Rowe's letter was provided to the Commission. On September 14, 2015, the Commission adopted Md. Code Regs. ("COMAR") 10.62.08.05, which governs the Commission's review of applications for medical cannabis grower licenses. COMAR 10.62.08.05 does not identify racial or ethnic diversity as factors to be considered in issuing medical cannabis grower licenses, but provides that "[f]or scoring purposes, the Commission may take into account the geographic location of the growing operation to ensure there is geographic diversity in the award of licenses." COMAR 10.62.08.05J.

On August 5, 2016, the Commission voted to issue pre-approvals for the applications for medical cannabis grower licenses of the top fifteen applicants, including the following eight Petitioners: Curio Cultivation, LLC ("Curio Cultivation");[5] Doctor's Orders Maryland, LLC ("Doctor's Orders"); ForwardGro, LLC ("ForwardGro"); Green Leaf Medical, LLC ("Green Leaf Medical"); Holistic Industries, LLC ("Holistic Industries"); Kind Therapeutics, USA, LLC ("Kind Therapeutics"); SunMed Growers,

---

[5]Curio Wellness, LLC was originally listed as a party to this appeal instead of Curio Cultivation. On July 11, 2017, Curio Wellness, LLC filed an Unopposed Motion to Correct Misnomer, stating that Curio Cultivation was the entity that had received pre-approval for a medical cannabis grower license, and that had participated in proceedings in the circuit court. In an Order issued on July 10, 2017, this Court replaced Curio Wellness, LLC with Curio Cultivation as a party to this appeal.

LLC ("SunMed Growers"); and Temescal Wellness, LLC ("Temescal Wellness") (together, "the Growers"). AMM was one of the businesses whose application for a medical cannabis grower license was not pre-approved. AMM contends that it is more than 80% African-American owned.

On October 31, 2016, in the circuit court, AMM filed a complaint against the Commission, its members, and the Department contending that the Commission failed to consider racial and ethnic diversity in pre-approving applications for medical cannabis grower licenses, and that, as such, the Commission had violated HG § 13-3306(a)(9)(i)1. AMM sought an order prohibiting the Commission from issuing final approvals for the fifteen medical cannabis growers that had been issued pre-approvals. AMM also sought, among other relief, an order requiring the Commission to reconduct the pre-approval stage of the medical cannabis grower licensing process. AMM requested that the Commission be required to conduct a disparity study and to actively seek racial and ethnic diversity among growers.

On December 30, 2016, certain Petitioners—namely, Curio Cultivation, Doctor's Orders, ForwardGro, SunMed Growers, the Coalition for Patient Medicinal Access, LLC,[6] and John and Jane Doe, who are minors who allege that they suffer from epileptic seizures and seek medical cannabis (together, "the Patients")—filed a Motion to Intervene. On the same date, those Petitioners also filed a motion to dismiss, contending, among other things,

---

[6]The Coalition for Patient Medicinal Access describes its purpose as "advocating for patient rights and prompt access to medical cannabis, and advocating for, and advancing the interests of" Curio Cultivation, Doctor's Orders, ForwardGro, and SunMed Growers.

that the doctrine of laches barred AMM's claims. On January 25, 2017, Holistic Industries also filed a Motion to Intervene.

On February 21, 2017, the circuit court conducted a hearing and denied the motions to intervene and the motion to dismiss. The circuit court concluded that Petitioners had not met the burden of proving that they were entitled to intervention as of right. The circuit court also denied Petitioners' request for permissive intervention. The circuit court concluded that the motion to dismiss was moot because Petitioners remained nonparties. Petitioners filed notices of appeal.

On May 15, 2017, AMM filed a "Motion for Emergency Temporary Restraining Order and Request for Order To Show Cause Why a Preliminary Injunction Should Not Be Granted and Request for Immediate Emergency Hearing." In the motion, AMM sought a temporary restraining order and a preliminary injunction preventing the Commission from issuing final approvals for medical cannabis grower licenses and from conducting inspections of the fifteen businesses whose applications for medical cannabis grower licenses were pre-approved. On May 25, 2017, the circuit court conducted a hearing and issued a temporary restraining order.

On May 30, 2017, ForwardGro, a grower that had passed all inspections and been issued a license, filed a notice of appearance of new counsel, and stated that it intended to "govern itself as a party" in this case. All other Petitioners—the Coalition for Patient Medicinal Access, the Maryland Wholesale Medical Cannabis Trade Association (together, "the Trade Association Petitioners"), the Patients, Curio Cultivation, Doctor's Orders, Green Leaf Medical, Holistic Industries, Kind Therapeutics, SunMed Growers, and

Temescal Wellness—filed renewed motions to intervene.

The circuit court denied the renewed motions to intervene, and denied ForwardGro's request to "govern itself as a party." All Petitioners other than ForwardGro, Holistic Industries, and Temescal Wellness filed a notice of appeal.

While this case was pending in the Court of Special Appeals, Petitioners other than ForwardGro, Holistic Industries, and Temescal Wellness filed a petition for a writ of *certiorari* and a motion to stay the proceedings in the circuit court. ForwardGro, Holistic Industries, and Temescal Wellness separately filed Lines in which they joined the petition. This Court granted the petition and the motion to stay.

In this Court, Petitioners—*i.e.*, the Growers, the Trade Association Petitioners, and the Patients—raise several issues. Petitioners contend that the circuit court erred in denying the motion to intervene. Petitioners argue both that they were entitled to intervention as of right, and that the circuit court abused its discretion in denying permissive intervention. Petitioners seek dismissal of the case based on the doctrine of laches. And, Petitioners request that, in the event that this Court remands the case to the circuit court, this Court instruct the circuit court to consider the issues that Petitioners raised in the motion to dismiss—namely, that the doctrine of laches applies, that this is an action for administrative mandamus that was not instituted timely under Maryland Rules 7-202 and 7-203, and that, if reviewed at all, the action must be considered a request for on-the-record judicial review of the Commission's actions under the substantial evidence test as opposed to a complaint for a declaratory judgment.

On July 27, 2017, this Court heard oral argument. On July 28, 2017, this Court

- 8 -

issued a *per curiam* order in which this Court: (1) reversed the circuit court's judgment with respect to the denial of intervention of the Growers and remanded the case to the circuit court with instructions to grant intervention as of right to the Growers; (2) affirmed the circuit court's judgment with respect to the denial of intervention of the Trade Association Petitioners and the Patients; (3) remanded the case to the circuit court for further proceedings including determination of the issue of laches; (4) lifted a stay issued by this Court on June 2, 2017; and (5) ordered that costs in this Court and the Court of Special Appeals be paid 50% by AMM, 25% by the Coalition for Patient Medicinal Access, and 25% by the Maryland Wholesale Medical Cannabis Trade Association.

In this opinion, we explain the basis for the July 28, 2017 order. In Part I, we hold that the Growers were entitled to intervention as of right under Maryland Rule 2-214(a)(2), to be made a party, *i.e.*, to intervene, under Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) ("CJ") § 3-405(a)(1), and to joinder under Maryland Rule 2-211(a), and that the circuit court abused its discretion in denying permissive intervention; the Patients and Trade Association Petitioners were not so entitled. In Part II, we conclude that this Court will not address the issues concerning laches, administrative mandamus, and the scope of judicial review raised in the motion to dismiss. Rather, we determine that the case is to be remanded to the circuit court with instructions to consider the issues that Petitioners raised in the motion to dismiss in light of the Court's reversal. The circuit court's ground for denying the motion to dismiss—namely, that the issues were moot because Petitioners that sought intervention were nonparties—has become a nullity given our reversal of the circuit court's denial of the motions to intervene as to the Growers.

- 9 -

## BACKGROUND

Having given an introductory summary of the events underlying this case, we now provide the details of the relevant statutory framework, and factual and procedural background.

## Statutory Framework

On April 7, 2014, the General Assembly passed House Bill 881 and Senate Bill 923, companion bills, creating the provision that is now HG § 13-3306(a)(9)(i)1,[7] which requires the Commission to "[a]ctively seek to achieve racial, ethnic, and geographic diversity when licensing medical cannabis growers[.]" 2014 Md. Laws 1506 (Vol. II, Ch. 240, H.B. 881); 2014 Md. Laws 1597 (Vol. II, Ch. 256, S.B. 923). Before the Governor approved the bills, in a bill review letter dated April 11, 2014, while reviewing multiple bills, in a footnote discussing various issues involving House Bill 881 and Senate Bill 923, the Attorney General of Maryland stated that "both bills require the Commission to 'actively seek to achieve racial, ethnic, and geographic diversity when licensing' medical marijuana growers and dispensaries." The Attorney General advised that these provisions must "be implemented consistent with the provisions of the United States Constitution as described in *Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) and *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2013)."

---

[7]The provision was originally codified as Md. Code Ann., Health Gen. (2009 Repl. Vol., 2014 Supp.) § 13-3309(a)(9)(i)1. See 2014 Md. Laws 1504, 1506, 1491 (Vol. II, Ch. 240, H.B. 881). In 2015, the General Assembly recodified the provision without substantive amendment as Md. Code Ann., Health Gen. (2015 Repl. Vol.) § 13-3306(a)(9)(i)1. See 2015 Md. Laws 1177, 1163 (Vol. II, Ch. 251, H.B. 490). For clarity, we refer to the provision's current version.

In Croson, 488 U.S. at 505, the United States Supreme Court held that the city of Richmond "failed to demonstrate a compelling interest in apportioning public contracting opportunities on the basis of race." In determining that Richmond had not established sufficient specific past discrimination to support the goal of awarding contracts to minority businesses, the Supreme Court stated that:

> Nothing we say today precludes a state or local entity from taking action to rectify the effects of identified discrimination within its jurisdiction. If the city of Richmond had evidence before it that nonminority contractors were systematically excluding minority businesses from subcontracting opportunities it could take action to end the discriminatory exclusion. Where there is a significant statistical disparity between the number of qualified minority contractors willing and able to perform a particular service and the number of such contractors actually engaged by the locality or the locality's prime contractors, an inference of discriminatory exclusion could arise. Under such circumstances, the city could act to dismantle the closed business system by taking appropriate measures against those who discriminate on the basis of race or other illegitimate criteria.

Id. at 509 (citations omitted). The Supreme Court observed that there was no evidence of past discrimination on the part of the city in awarding contracts or any evidence that the city's prime contractors had discriminated against minority-owned subcontractors. See id. at 480. The Supreme Court concluded that the award of public contracts based on racial considerations was subject to strict scrutiny. See id. at 493-94. After noting that Richmond identified no evidence that qualified minority contractors had been passed over for city contracts, the Supreme Court indicated that proper findings were necessary to demonstrate past discrimination. See id. at 510. Later, in Fisher, 133 S. Ct. at 2419-20, when considering an undergraduate admissions system at a public university, the Supreme Court again applied the strict scrutiny standard, and added that once a university "has established

that its goal of diversity is consistent with strict scrutiny, however, there must still be a further judicial determination that the admissions process meets strict scrutiny in its implementation."

On April 14, 2014, the Governor approved House Bill 881 and Senate Bill 923. See 2014 Md. Laws 1514 (Vol. II, Ch. 240, H.B. 881); 2014 Md. Laws 1606 (Vol. II, Ch. 256, S.B. 923). After HG § 13-3306(a)(9)(i)1 became effective, during the 2015 legislative session, Delegate West requested advice from the Office of Counsel to the General Assembly as to the constitutionality of HG § 13-3306(a)(9)(i)1. In a letter dated March 13, 2015, Rowe advised Delegate West that it was her understanding that the Attorney General of Maryland had previously submitted a bill review letter concerning House Bill 881 and Senate Bill 923 indicating that the bills must comply with the requirements set forth in Croson and Fisher. Specifically, Rowe advised that the Commission would be prevented from participating in race- or ethnicity-conscious licensing of medical cannabis growers without a disparity study showing past discrimination in similar programs. Rowe indicated that, in the absence of such a study, the Commission would be limited to achieving racial and ethnic diversity among growers through the use of broad publicity about the availability of licenses and simply encouraging businesses from various racial and ethnic groups to apply. Rowe advised, however, that it would be constitutional for the Commission to "encourage businesses of any type, including those in the minority business enterprise program, to apply to participate in any type of government program." Rowe stated that she was not aware of any study that would cover grower or dispensary licenses for medical cannabis, or even licenses in general, because "[m]ost State licensing programs

license everyone who meets the licensing qualifications, and thus would not give rise to the ability to pick some and not others." Rowe was of the opinion that the dictates of Croson and Fisher were implicated only as to racial and ethnic diversity, but not geographic diversity. Rowe concluded that, if a court declared HG § 13-3306(a)(9)(i)1's requirement of actively seeking racial and ethnic diversity unconstitutional, that requirement would be severable from the rest of HG § 13-3306.

It is undisputed that, at some point, the Commission received Rowe's letter. The Commission promulgated a regulation, COMAR 10.62.08.05, addressing application review of medical cannabis grower licenses. The June 26, 2015 edition of the Maryland Register included advance notice of the text of COMAR 10.62.08.05. Among other things, COMAR 10.62.08.05A provides that "[t]he burden of proving an applicant's qualifications rests on the applicant[,]" and COMAR 10.62.08.05G provides that "[t]he Commission intends to award the licenses to the best applications that most efficiently and effectively ensure public safety and safe access to medical cannabis." COMAR 10.62.08.05I provides that "[t]he Commission, or a Commission independent contractor, shall review for a pre-approval for a license the submitted applications as described in Regulations .02B and .05E of this chapter[,]" and states that "applications shall be ranked based on" certain "weighted criteria" as listed, including operational factors, safety and security factors, commercial horticultural or agricultural factors, production control factors, business and economic factors, and other additional factors. COMAR 10.62.08.05 does not list racial or ethnic diversity as factors to be considered. COMAR 10.62.08.05J, however, provides: "For scoring purposes, the Commission may take into account the geographic location of the

growing operation to ensure there is geographic diversity in the award of licenses." On September 14, 2015, COMAR 10.62.08.05 became effective. COMAR 10.62.02.04B, which became effective the same day and is part of the general regulations governing the Commission, provides that "[t]he Commission shall encourage applications from applicants who qualify as minority business enterprises, as defined in" Md. Code Ann., State Fin. & Proc. (1985, 2015 Repl. Vol.) § 14-301.[8]

**Applications for Medical Cannabis Grower Licenses and Complaint**

On September 28, 2015, the Commission made applications for medical cannabis grower licenses available. The application did not require applicants to identify the applicant's and/or any investor's race or ethnicity. The deadline for submitting applications was November 6, 2015. By that date, the Commission had received 145 applications for medical cannabis grower licenses. To assist with the application review process, the Commission entered into an agreement with the Regional Economic Studies Institute ("RESI") at Towson University, and the Commission and RESI designed a "double-blind" subject-matter-expert-based analysis pursuant to which the applicants' names were not revealed to the evaluators or the Commission, and the Commission voted on the top-ranked applications only by coded number.

On August 5, 2016, the Commission met in open session at the University of Maryland Medical School to consider issuing pre-approvals—also known as Stage 1 approvals—for medical cannabis grower licenses. At the meeting, the Commission voted

---

[8]See Footnote 3 above.

with respect to ranking the top twenty applicants for a medical cannabis grower license and voted to issue pre-approvals to the top fifteen applicants, including the Growers. As to a grower's status after pre-approval, COMAR 10.62.08.06E provides that "[t]he Commission may rescind pre-approval of a grower license if the grower is not operational within [one] year of pre-approval." And, in relevant part, COMAR 10.62.08.07B(1) provides that "[t]he Commission may issue a license [] to grow medical cannabis . . . on a determination that[ a]ll inspections are passed and all of the applicant's operations conform to the specifications of the application as pre-approved pursuant to Regulation .06 of this chapter." (Paragraph break omitted).

AMM applied for, but was not awarded, pre-approval for a medical cannabis grower license.[9] In paragraph 6 of its complaint for declaratory judgment, AMM asserted that it is more than 80% African-American owned. In its answer to the complaint, the Commission responded that it was without knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 6 of the complaint and therefore denied the allegation.

On October 31, 2016, AMM filed its complaint for declaratory judgment in the circuit court naming the Commission, its members, and the Department as defendants.

---

[9]In its brief, the Commission contends that AMM "did not rank in the top 60 applicants." The Commission's contention is based upon an occurrence during the deposition testimony of Harry "Buddy" Robshaw, III, a member of the Commission, in which AMM's counsel sought to introduce a list of sixty applicants for a medical cannabis grower license apparently identified by county; according to the Commission's counsel, the list did not reflect AMM's position. In its brief, AMM contends that its "application ranking, and the reasons for the ranking, if AMM's application was, in fact, even ranked, are unknown to AMM."

AMM asserted that the Commission had failed to consider racial and ethnic diversity in the pre-approval process for issuing medical cannabis grower licenses in contravention of HG § 13-3306(a)(9)(i)1. AMM sought an order prohibiting the Commission from issuing final approvals for the fifteen medical cannabis growers whose applications for medical cannabis grower licenses were pre-approved "until such time as the Commission takes corrective action with respect to the unlawful, unconstitutional, arbitrary, capricious, and/or unreasonable actions it has taken thus far[.]" AMM also sought, among other relief, a determination by declaratory judgment "that the Commission's actions were arbitrary, capricious, unreasonable, and/or illegal[,]" and an order requiring the Commission "to redo" the pre-approval stage of the medical cannabis grower licensing process. AMM requested that the Commission be required to actively seek racial and ethnic diversity among growers and "to conduct a study on the existence and effect of past and present discrimination as applicable to the [General Assembly]'s statutory directives[,]" *i.e.,* a disparity study.

**Motions to Dismiss and Motions to Intervene**

On December 12, 2016, the Commission filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment, contending, among other things, that the case should be dismissed in its entirety pursuant to Maryland Rule 2-211, entitled "Required joinder of parties," because the businesses whose applications for medical cannabis grower licenses were pre-approved were necessary parties, but had not been joined as defendants.

On December 30, 2016, certain Petitioners—namely, Curio Cultivation, Doctor's Orders, ForwardGro, SunMed Growers, the Coalition for Patient Medicinal Access, and

the Patients—filed a Motion to Intervene, contending that they had a direct interest in the action and that delay was prejudicial to them. On the same date, those Petitioners filed a Motion to Specially Assign, Consolidate, and Dismiss This Action, requesting that the case be consolidated with a pending case involving other businesses that were denied pre-approval,[10] and contending, among other things, that AMM's claims were barred by the doctrine of laches and that the matter is, in actuality, a request for administrative review of an agency action, *i.e.*, judicial review of an agency decision. Specifically, as to the doctrine of laches, Petitioners argued that AMM exercised undue delay in filing its complaint and that they were prejudiced by the delay. Petitioners contended that the action was not timely filed because on August 15, 2016, the Commission posted notice of the pre-approval selections on its website. According to Petitioners, this was public notice to AMM that it had not been selected; yet, AMM did not file its complaint until October 31, 2016.

---

[10]The basis for the requests to specially assign and consolidate this case is as follows. In GTI Md., LLC, et al. v. Natalie M. LaPrade Md. Med. Cannabis Comm'n, et al., No. 24-C-16-005134 (Balt. City Cir. Ct.), GTI Maryland, Inc. and Maryland Cultivation and Processing—two businesses whose applications for medical cannabis grower licenses were not pre-approved—sued the Commission, contending that the Commission should not have considered geographic diversity in pre-approving applications for medical cannabis grower licenses. The circuit court's administrative judge specially assigned GTI to another judge of the circuit court. The Motion to Specially Assign, Consolidate, and Dismiss This Action was filed in both this case and GTI, and included requests that this case be specially assigned to the same circuit court judge and consolidated with GTI.

In an order issued on February 7, 2017, the circuit court's administrative judge found that "assignment of this case [and GTI] to a single judge will promote the expeditious resolution of this case[.]" Accordingly, the circuit court's administrative judge specially assigned this case to the circuit court judge who had been specially assigned to GTI. In an order issued on February 21, 2017, the circuit court denied the motion to consolidate this case and GTI.

According to Petitioners, the posting on the website constituted notice of a final administrative decision and a petition for judicial review was required to be filed within thirty days of that date. Essentially, Petitioners asserted that AMM's complaint was actually an action for administrative mandamus, *i.e.*, a petition for judicial review, that was not timely filed. According to Petitioners, if reviewed at all, the complaint should be considered a petition for judicial review of an agency action, subject to an on-the-record review under the substantial evidence test and whether the Commission's action was arbitrary or capricious.

On January 5, 2017, AMM filed an opposition to the motion to intervene, contending that the proposed grower intervenors had failed to demonstrate that their interest in a medical cannabis license would be impaired if the Commission were required to reconduct the pre-approval process. AMM argued that its complaint for declaratory judgment raised challenges only to the Commission's actions and that the Commission would be the sole party bound by any judgment in the case. According to AMM, the proposed grower intervenors would neither incur any legal obligation nor lose any legal rights as a result of the action. AMM posited that, in the event that it obtained the relief it sought, the Commission would necessarily revisit the licensing process and the proposed grower intervenors would still be able to compete for a license.

As to the Patients, AMM contended that they had no more than a contingent or remote interest in this case. AMM pointed out that medical cannabis can be dispensed only by a qualifying physician to a qualifying patient. As to the Coalition for Patient Medicinal Access, AMM argued that the Coalition for Patient Medicinal Access did not have a

sufficient interest to warrant intervention. AMM pointed out that the Coalition for Patient Medicinal Access was "formed for the purpose of advocating for patient rights and prompt access to medical cannabis, and advocating for, and advancing the interests of, the growers." (Brackets and internal quotation marks omitted). According to AMM, a desire to advocate is not an interest sufficient for intervention. In addition, AMM maintained that the Commission adequately represented all of the proposed intervenors' interests. In sum, AMM contended that the proposed intervenors failed to establish that intervention as of right or permissive intervention was warranted.

On January 25, 2017, Holistic Industries filed a Motion to Intervene, contending that as a pre-approval awardee, it had a direct interest in the action and that its rights would be impaired or impeded if it were not permitted to intervene.

On February 20, 2017, the Petitioners that had filed the December 30, 2016 motion to intervene filed a Line with four affidavits attached from owners or managing members of the Growers and one affidavit from a parent of the Patients. In the first affidavit, Michael G. Bronfein ("Bronfein"), the managing member of, and investor in, Curio Cultivation, averred that, since Curio Cultivation's application for a medical cannabis grower license was pre-approved, it has spent more than $7 million to prepare to become operational by the State's regulatory deadline. Specifically, Bronfein averred that Curio Cultivation has purchased and improved a building in Timonium, Maryland, and "obtained costly and highly specialized architectural and engineering services related to that building[.]" Curio Cultivation has hired nine employees, including ones who specialize in human resources, business development, operational management, accounting, finance, marketing, and sales.

According to Bronfein, at least one employee used to work outside Maryland, and has bought a home in Maryland because of the employee's new job with Curio Cultivation. Bronfein also averred that Curio Cultivation has established a temporary office in Towson, Maryland, and has "paid substantial amounts for salaries and expended other funds to operate that office" in reliance on its pre-approval.

In the second affidavit, Jake Van Wingerden ("Van Wingerden"), the owner and managing member of SunMed Growers, averred that it has signed a binding ten-year lease for a cultivation facility, and that the facility was currently under construction. Van Wingerden indicated that there is a statutory moratorium on additional grower licenses through June 1, 2018, and that the pre-approval is a "first to market" provision and is an important benefit. Van Wingerden averred that any delay in licensure would be prejudicial.

In the third affidavit, Gail L. Rand ("Rand"), member and Chief Financial Officer of ForwardGro, averred that ForwardGro and its affiliate, in reliance on the pre-approval, have "spent several million dollars" to prepare to become operational within the regulatory timeframe. Specifically, according to Rand, ForwardGro and its affiliate are in the process of constructing a greenhouse and operations facility, which will include "energy efficient boilers, floor radiant heat, extensive irrigation, specialty lighting, and a substantial security system." Rand averred that ForwardGro has "obtained costly interests in real property, construction documents for local permitting, retained personnel, and taken other costly actions to prepare to cultivate medical cannabis pursuant to Maryland law." Rand, like Van Wingerden, stated that the pre-approval constituted a "first to market" provision and was an important benefit.

In the fourth affidavit, one of the parents of the Patients averred that the Patients are minors who suffer from epilepsy and "have frequent seizures that are painful and frightening." According to the parent, "[a] treating physician has stated that use of medical cannabis will likely alleviate their symptoms."

**Hearing on Motions to Dismiss and Motion to Intervene**

On February 21, 2017, the circuit court conducted a hearing on the Commission's motion to dismiss and Petitioners' motion to dismiss, as well as the motions to intervene. The circuit court first addressed the motions to intervene. As to the timeliness of the motions to intervene, counsel for Petitioners observed that AMM had not contended that the motions to intervene were untimely filed. Petitioners' counsel argued that there was no dispute that the motions to intervene were timely filed. AMM's counsel disagreed that the motions to intervene were timely filed and the following exchange occurred:

> [AMM'S COUNSEL]: Your Honor, there's a four part test. I don't need to go through the entire thing, you know what it is. One thing I do want to say is that we do not waive timeliness, Your Honor. We do not believe this was timely.
>
> THE COURT: I didn't ask you to waive it, I just didn't want to hear any argument on it. But that's fine, I've reviewed it. Go ahead.
>
> [AMM'S COUNSEL]: Thank you, Your Honor.

Later, the following exchange occurred:

> [PETITIONERS' COUNSEL]: [AMM's c]ounsel said they didn't waive timeliness. I'd suggest they did. Your Honor said you didn't hear argument on that and I won't argue unless Your Honor wishes.
>
> THE COURT: I don't need to hear anything on timeliness.
>
> [PETITIONERS' COUNSEL]: Thank you.

- 21 -

After hearing argument, the circuit court ruled orally from the bench, reserving ruling on Holistic Industries's motion to intervene, and denying the December 30, 2016 motion to intervene.[11] The circuit court first addressed intervention as of right. The circuit court observed that case law establishes that the following four requirements for intervention as of right exist under Maryland Rule 2-214(a): (1) the motion to intervene was timely; (2) the person seeking intervention claims an interest relating to the property or transaction that is the subject of the action; (3) the person is so situated that the disposition of the action, as a practical matter, may impair or impede the person's ability to protect that interest; and (4) the person's interest is not adequately represented by existing parties to the suit. See Md.-Nat'l Capital Park & Planning Comm'n v. Town of Washington Grove, 408 Md. 37, 69-70, 968 A.2d 552, 571-72 (2009).

The circuit court addressed the first requirement, timeliness, as follows: "As the Court noted during arguments, the Court does not need to assess the timeliness of the [motion to intervene]. Again, I would find that it was timely given the limited time since the filing of both suits."

As to the second and third requirements, a claim of an interest and impairment of that interest, the circuit court concluded that Petitioners lacked an interest in the case. The circuit court found that the case stemmed from the implementation of the medical cannabis

---

[11]After denying the December 30, 2016 motion to intervene, before the conclusion of the hearing, the circuit court also denied Holistic Industries's motion to intervene, stating that the motion was denied for the same reasons that the December 30, 2016 motion to intervene was denied.

- 22 -

statute by the Commission and that the question was whether the statute had been applied in an unconstitutional manner. The circuit court ruled that Petitioners' alleged interest was "not applicable[,]" stating:

> [Petitioner]s believe that they should be allowed in as a matter of right, because if these two complainants[12] are allowed to go forward, the possible time and money loss, which is speculative, could [a]ffect their ability to proceed as growers or receive medical cannabis.
>
> While this may be true, the first issue is to determine [] the transactions that are the subject of this action. This Court finds that the transactions in both cases stem from the applicable or implementation of the statute by the Commission[], and whether or not the statute has been applied or implemented in an unconstitutional, arbitrary, or capricious manner. [Petitioner]s claim an interest, but this Court finds that the alleged interest is not applicable here. One can always claim an interest in litigation if they stand to benefit from the implementation of legislation that allows parties to be involved in commerce regulated by the government. But that is not the true issue here in [this] case.
>
> The issue at hand in the GTI case is whether or not the Commission, by allegedly removing GTI and MCP[13] from the initial list of [fifteen] growers to make it out of Stage I and replacing them on the list of Stage I awardees with two proposed growers who allegedly scored lower [than] those two entities acted in an arbitrary or capricious manner. If that is not the finding, then the process would continue. If the Court does make that finding, then theoretically the Court could order specific performance. If ordered, this could [a]ffect only two entities, Holistic[ Industries] and Shore Naturals, LLC,[14] not any of the proposed intervenors.

* * *

> This Court does understand that the statute was recently enacted and that it has not gone under significant scrutiny. There's no history of

---

[12]The circuit court was referring to the complainant in this case and the complainant in the separate case of GTI, which is discussed above in Footnote 10.

[13]"GTI" stands for "Green Thumb Industries." "MCP" stands for "Maryland Cultivation and Processing." Both GTI and MCP are parties to the separate case of GTI, which is discussed above in Footnote 10. Neither GTI nor MCP is a party to this appeal.

[14]Shore Naturals, LLC applied for, and received a pre-approval for, a medical cannabis grower license. Shore Naturals, LLC is not a party to this appeal or the separate case of GTI.

administrative and judicial rulings for the statute. There are allegations that the process was flawed at the inception and at the application. This Court does not know if it is true, but does note that [Petitioners'] concerns can only be address[ed] after a determination of the statute as applied and implemented by the Commission was not arbitrary, capricious, or unconstitutional. Those issues have to do with the statute and not the tangential issues requested.

The Court therefore does not find that [Petitioner]s have sufficient interest that are connected to the actions involved in each case. And that's whether the person is so situated that the disposition of the action as a practical matter may impair or impede that person's ability to protect that interest. Once again, this Court has already determined that the claim of interest in this case for [Petitioners] is misplaced given the allegations presented by the plaintiffs in each case. These are specific issues concerning actions of the subcommittee and the committee in implementing the statute. And once again, arguments that the Commission is uniquely situated to respond to, not the growers, the potential users of the medical cannabis grown.

The Court understand[s] that [Petitioner]s have a general interest in the outcome of the case. The growers want nothing to stand in the way of the process which would allow them to get a license, the patients certainly want access to medical cannabis as soon as possible. Those wishes do not rise to the level of a right to intervene.

Addressing the fourth requirement, inadequate representation by the parties, the circuit court concluded that the Commission adequately represented Petitioners' interests, stating:

[T]he Court may be called upon to determine whether or not the process used by the Commission in reviewing and granting Stage I approval to medical cannabis grower license applicants was done in a way that was arbitrary, capricious or potentially unconstitutional. The Commission has a true interest in making sure that the Court does not make that finding. And so the arguments of the Office of the Attorney General is uniquely suited to advance the appropriate arguments. If the Court does not find the actions unconstitutional, arbitrary, or capricious, then the process would continue.

* * *

This Court is satisfied that the Commission, represented by the Office of the Attorney General and not [Petitioner]s before the Court today, is the

appropriate defendant to represent the issue of whether or not the statute as implemented was done in an arbitrary, capricious, or unconstitutional manner in part as alleged by the replacement of two growers in the GTI matter[, or in] total, as alleged by the overall application of the statute, in the AMM matter. So far this Court has seen vigorous representation by the Attorney General on behalf of the Commission. Simply because a litigation may not be going in the ma[nn]er[] that a private entity thinks it should, whether the arguments [that] are made are different, there's no basis to allow intervention.

The circuit court denied permissive intervention, stating:

> The Court does not believe that it would be either appropriate or necessary to allow the proposed intervenors in either case, pursuant to the permissive right to intervention under [Maryland] Rule 2-214(b). The Court has considered whether intervention would unduly delay the adjudication of either claim and it determines that it would. Interestingly enough, [Petitioner]s seemingly have an interest in speeding up the process, because they want to begin growing as soon as possible, and want nothing to stand in the way of the next phase of licensing.
> While understanding the desire for their speed, filing various motions does add time to these proceedings. [AMM has] filed [its] claims and as noted above, the issue here is whether or not the actions of the [Commission] were arbitrary, capricious, or potentially unconstitutional. The Commission is ready, willing, and able to defend its actions. Allowing intervenors at this stage does not assist in that determination.

After denying the motion to intervene, the circuit court denied Petitioners' motion to dismiss as moot because Petitioners were nonparties. The circuit court stated: "And those same former proposed intervenors filed a Motion to Dismiss. And again for the same reasons the Court will find the Motion to Dismiss filed in AMM . . . by the proposed intervenors is moot now that they are not parties to this action."

In an order issued on February 21, 2017, the circuit court denied the Commission's Motion to Dismiss, or, in the Alternative, for Summary Judgment. In another order issued on February 21, 2017, the circuit court denied Holistic Industries's motion to intervene. In

a third order issued on February 21, 2017, the circuit court denied the December 30, 2016 motion to intervene.

## Remaining Proceedings in the Circuit Court

On March 10, 2017, the Commission filed an answer, raising affirmative defenses, including that the complaint failed to state a claim upon which relief could be granted, that the complaint is barred by the doctrine of laches and the statute of limitations, and that the "claims are barred to the extent that the allegations contained therein are not properly brought before the Court in any declaratory judgment action." On March 15, 2017, Petitioners filed their first Notice of Appeal, which stated that it "relate[d] to the February 21, 2017[] Order(s)." On March 16, 2017, Holistic Industries filed a Notice of Appeal of the circuit court's denial of its motion to intervene. On March 22, 2017, Petitioners filed an Amended Notice of Appeal, which stated that it "relate[d] to each appealable decision and order, including the February 21, 2017, order denying the motion to intervene[.]"

On May 15, 2017, AMM filed a "Motion for Emergency Temporary Restraining Order and Request for Order To Show Cause Why a Preliminary Injunction Should Not Be Granted and Request for Immediate Emergency Hearing." In the motion, AMM sought a temporary restraining order and a preliminary injunction to prevent the Commission from issuing final approvals for medical cannabis grower licenses and from conducting inspections of the fifteen businesses whose applications for medical cannabis grower licenses were pre-approved. On May 17, 2017, the Commission filed an opposition to the motion, arguing, among other things, that AMM impermissibly delayed filing the motion, AMM had no likelihood of success with respect to the merits of the case, and AMM's

request contravened the overwhelming public interest to provide medical cannabis to patients in Maryland.

On May 25, 2017, the circuit court conducted a hearing, issued a temporary restraining order with a $100 bond, and scheduled a hearing on AMM's request for a preliminary injunction for June 2, 2017. At the hearing on May 25th, the circuit court found that AMM had met the burden of showing that it would incur immediate substantial and irreparable harm unless a temporary restraining order were granted before a hearing on the request for a preliminary injunction. The circuit court determined that counsel for ForwardGro would be invited to argue at the hearing on the preliminary injunction because the Commission had issued a medical cannabis grower license to ForwardGro, and there was a "potential that the rights of [ForwardGro] will be affected." The circuit court stated that, accordingly, ForwardGro's counsel would be permitted to argue solely on the issue of whether ForwardGro's medical cannabis grower license should be suspended pending resolution of the case.[15]

In an order issued on May 25, 2017, the circuit court granted a temporary restraining order, enjoining the Commission "from authorizing, granting[,] and/or issuing any final

---

[15]Subsequent to oral argument, as of August 14, 2017, it was reported that the following eight additional companies were awarded medical cannabis grower licenses: Green Leaf Medical; Harvest of Maryland, LLC; HMS Health; Temescal Wellness; Curio Cultivation; Holistic Industries; Maryland Compassionate Care and Wellness; and Blair Wellness, LLC. See Bryan P. Sears, *Time may be running out for some would-be Md. cannabis companies*, The Daily Record (Aug. 14, 2017), http://thedailyrecord.com/2017/08/14/md-medical-cannabis-commission-awards-nine-licenses/ [https://perma.cc/Y3SU-XSXN]. Of those nine, Curio Cultivation, Green Leaf Medical, Holistic Industries, and Temescal Wellness are the Growers who are seeking intervention in this case.

licenses to cultivate and grow medical cannabis in Maryland prior to a full adversarial hearing on the propriety of granting a Preliminary Injunction[.]" The order stated that the temporary restraining order would expire on June 4, 2017.

In an e-mail dated May 25, 2017, the circuit court judge's law clerk advised the Commission's counsel, AMM's counsel, and counsel for all Petitioners other than Holistic Industries and Temescal Wellness that the circuit court had invited ForwardGro's counsel to the June 2, 2017 hearing for the sole purpose of arguing as to whether ForwardGro's license should be suspended pending resolution of the case. At the time, ForwardGro did not have its own counsel, and instead was represented by the same counsel who represented all Petitioners other than Holistic Industries and Temescal Wellness. Within days of the law clerk's e-mail, ForwardGro obtained its own counsel.

On May 30, 2017, ForwardGro's counsel filed a Notice of Appearance of New Counsel, stating that it considered the May 25, 2017 e-mail as a reconsideration of the circuit court's prior denial of ForwardGro's motion to intervene and that ForwardGro would "govern itself as a party going forward in th[e] matter, unless the Court order[ed] otherwise."[16] (Footnote omitted). ForwardGro's counsel asserted that, because it had been granted a medical cannabis grower license, it had "a concrete, legally protected interest" in the case.

On the same day, certain Petitioners—Curio Cultivation, Doctor's Orders, Green Leaf Medical, Kind Therapeutics, SunMed Growers, the Trade Association Petitioners, and

---

[16]On May 31, 2017, counsel for all Petitioners other than Holistic Industries and Temescal Wellness filed a Notice of Withdrawal of Appearance as ForwardGro's counsel.

the Patients—filed an "Emergency Motion to Dissolve or Modify [the Temporary Restraining Order]; for Renewal of the Motion to Intervene; to Intervene in This Action; to Consolidate; for Stay Pending Appeal; and in Opposition to Motion for Preliminary Injunction," as well as a separate motion to shorten time to respond to the emergency motion. On May 31, 2017, Temescal Wellness filed a motion in which it expressly joined the emergency motion. On May 31, 2017, Holistic Industries filed a renewed motion to intervene.

In an order issued on May 31, 2017, the circuit court denied the emergency motion to dissolve. In a separate order issued on May 31, 2017, the circuit court denied ForwardGro's request to "govern itself as a party." The circuit court also indicated that the May 25, 2017 e-mail did not serve as reconsideration of the circuit court's denial of the motion to intervene. The circuit court ordered that ForwardGro would have twenty-five minutes of time at the June 2, 2017 hearing to address the issue of whether its medical cannabis grower license should be suspended if a preliminary injunction were to be granted.

On June 1, 2017, Petitioners noted an appeal of the circuit court's May 31, 2017 order.

**Petition for a Writ of *Certiorari* and Appellate Proceedings**

On June 2, 2017, while this case was pending in the Court of Special Appeals, all Petitioners other than ForwardGro, Holistic Industries, and Temescal Wellness filed an "Emergency Bypass Petition for Writ of Certiorari and Motion to Stay Circuit Court Action," raising the following two issues:

1. Are petitioners entitled to participate in a lawsuit, including a preliminary injunction hearing, where the Plaintiff has expressly asked to invalidate their award, and any injunction would destroy their businesses, force them to lay off employees, cause substantial economic losses, and deprive some of them of needed cannabis therapy?

2. Should the circuit court action be stayed pending resolution of the issue of indispensable parties, given that the plaintiff waited months or years to seek a preliminary injunction and has no likelihood of success on the merits?

On the same day, Petitioners filed an "Emergency Motion for Stay of Proceedings in the Circuit Court for Baltimore City and/or Injunction." On that same day, this Court granted the emergency motion for stay, and ordered that the hearing on the preliminary injunction in the circuit court was stayed, pending further Order of this Court.[17] Finally, on the same day, AMM filed a "Motion to Maintain *Status Quo* Pending Further Order of This Honorable Court and Request for Hearing." In the motion to maintain, AMM requested that this Court issue an order indicating that the temporary restraining order that the circuit court had issued on May 25, 2017 would remain in force until further order of this Court.[18]

On June 5, 2017, ForwardGro, Holistic Industries, and Temescal Wellness separately filed Lines joining the petition for a writ of *certiorari*. In an order issued on June 9, 2017, this Court granted the petition for a writ of *certiorari*, denied the motion to maintain *status quo*, and stayed all proceedings in the circuit court pertaining to the case, pending further Order of this Court.[19] In the order, this Court observed that the temporary

---

[17]Circuit court docket entries dated June 2, 2017, as to an "Open Court Proceeding," state: "Court of Appeals stayed the case"; "[o]rder to be filed."

[18]The temporary restraining order expired by operation of law on June 4, 2017.

[19]In its brief, AMM states that the second question presented in the petition for a writ of *certiorari*, which pertained to a stay of proceedings in the circuit court, is now moot.

restraining order issued by the circuit court on May 25, 2017, had expired.[20]

On July 27, 2017, this Court heard oral argument. On July 28, 2017, this Court issued a *per curiam* order in which this Court: (1) reversed the circuit court's judgment with respect to the denial of intervention of the Growers and remanded the case to the circuit court with instructions to grant intervention as of right to the Growers; (2) affirmed the circuit court's judgment with respect to the denial of intervention of the Trade Association Petitioners and the Patients; (3) remanded the case to the circuit court for further proceedings including determination of the issue of laches; (4) lifted the stay issued by this Court on June 2, 2017; and (5) ordered that costs in this Court and the Court of Special Appeals be paid 50% by AMM, 25% by the Coalition for Patient Medicinal Access, and 25% by the Maryland Wholesale Medical Cannabis Trade Association.

---

We agree, and do not address the second question in light of the circumstance that, in the order granting *certiorari*, this Court stayed the proceedings in the circuit court pending further Order of this Court and that on July 28, 2017, the *per curiam* order issued by this Court lifted that stay.

[20] On July 11, 2017, all Petitioners other than ForwardGro, Holistic Industries, and Temescal Wellness filed a Motion to Correct Record, stating that the record did not include the transcript of the May 25, 2017 hearing on the motion for a temporary restraining order in this case, as well as the transcript of the February 21, 2017 hearing in GTI Md., LLC, et al. v. Natalie M. LaPrade Md. Med. Cannabis Comm'n, et al., No. 24-C-16-005134 (Balt. City Cir. Ct.). All Petitioners other than ForwardGro, Holistic Industries, and Temescal Wellness requested that the latter transcript be added to the record because, at the February 21, 2017 hearing in this case, counsel for all Petitioners other than ForwardGro, Holistic Industries, and Temescal Wellness expressly incorporated the arguments made at the February 21, 2017 hearing in GTI. All parties to this case, other than AMM, consented to the motion to correct record.

## DISCUSSION

## I. Intervention

## The Parties' Contentions

Petitioners[21] contend that the circuit court erred in denying the motion to intervene and the renewed motion to intervene because they have vested and/or protectable interests that are not adequately protected by any other party in the action. According to Petitioners, "[a] vested right is one that is an immediate right of present enjoyment or a present fixed right of future enjoyment[,]" and the Growers are awardees who were compelled by regulation to spend millions of dollars and the Patients are the people for whom the medical cannabis statute was passed, and thus have an interest in the action. (Citation and internal quotation marks omitted). Petitioners argue that, even if their interests are not deemed vested, they have interests "relating to" the transaction that is the subject of the case. Petitioners assert that under relevant case law, the rule on intervention requires only that an individual claim an interest relating to the property that is the subject of a lawsuit. Petitioners point out that they have made large investments as a result of the pre-approvals and, as such, they have met the interest requirement for intervention as of right.

Petitioners contend that the Growers' rights vested on August 15, 2016, upon

---

[21]Each of ForwardGro, Holistic Industries, and Temescal Wellness has its own counsel, while all nine other Petitioners share the same counsel. Accordingly, Petitioners have filed a total of four briefs: one from ForwardGro, one from Holistic Industries, one from Temescal Wellness, and one from the other nine Petitioners. In their individual briefs, ForwardGro, Holistic Industries, and Temescal Wellness expressly join the other nine Petitioners' brief, and state additional facts and/or make additional arguments that are specific to them.

announcement of their pre-approvals for medical cannabis grower licenses. Petitioners argue that the Growers essentially entered into a contractual agreement with the State, which obligated them to become fully operational and the State to inspect their facilities and award medical cannabis grower licenses if they met the regulatory requirements. According to Petitioners, under the circumstances above, the Commission has no discretion to deny the Growers a medical cannabis grower license, provided the Growers pass all inspections. Petitioners maintain that the relief that AMM seeks will impair the Growers' interests, as they have invested capital in buying property and equipment, acquiring permits, constructing buildings, and hiring employees.

Petitioners contend that the Commission does not adequately represent the Growers' interests in their medical cannabis grower licenses and business operation investments because the Commission's interest is in administering a public health program that will make medical cannabis available to qualifying patients. Petitioners point out that the Commission has acknowledged that the Growers who were recipients of pre-approvals for medical cannabis grower licenses are indispensable parties and that the Commission does not represent the Growers' interests. Petitioners maintain that the relief that AMM seeks would impair or impede the Patients' interest in safeguarding their health by using medical cannabis to alleviate their pain and suffering, an interest which the General Assembly sought to protect.

Petitioners assert that in addition to entitlement to intervention as of right, they were also entitled to permissive intervention because they have claims with common issues of law and fact with those in this case. Petitioners contend that, to the extent that AMM has

filed a claim for declaratory judgment, both CJ § 3-405(a)(1) and Maryland Rule 2-211(b) confer upon them the right to intervene as indispensable parties as a matter of law.[22]

The Commission agrees that the Growers have a right to intervene. Specifically, the Commission contends that the Growers have a right to intervene pursuant to Maryland Rule 2-214(a). According to the Commission, the Growers have a right to intervene as a matter of law because AMM brought an action for declaratory judgment and both Maryland Rule 2-211(a) and CJ § 3-405(a) require that the Growers be made parties to the action. Additionally, the Commission argues that the Growers are entitled to intervention as of right because the Growers have financial and other interests that would be adversely affected by the relief that AMM seeks. The Commission argues that it cannot protect the Growers' interests because it does not share those interests, and because it and the Growers have different objectives in this case. The Commission points out that, although it has an interest in defending the validity of its regulations and processes, it does not share an interest in protecting either the financial interests or rights of the Growers. The Commission asserts that, for example, the Growers have argued that they have property rights that are at stake in this case, while the Commission has not addressed this contention. Finally, the Commission points out that, although it has raised the doctrine of laches as an affirmative defense, the Growers are uniquely qualified to establish prejudice to their interests as a result of AMM's delay.[23]

---

[22]Petitioners do not specifically address the Trade Association Petitioners' interests.

[23]The Commission does not address the Patients' interests or the Trade Association Petitioners' interests. Nor does the Commission address Petitioners' contention that the

- 34 -

AMM responds that Petitioners are not entitled to intervention as of right because they do not have direct, significant, legally protectable interests that this case's outcome would impair or impede. AMM contends that the Growers are not automatically entitled to medical cannabis licenses after receiving pre-approvals because the Growers have no proven track record and are entering a newly regulated market. AMM argues that the Growers do not have a legally protectable interest and are not entitled to a risk-free investment. AMM maintains that there is no guarantee that, if it is successful in this case, the Commission will rescind the Growers' pre-approvals or that the Commission would enforce the one-year regulatory time limit regardless of the outcome of the case.

AMM contends that the Patients have only a contingent and remote interest in receiving medical cannabis, and that it is not enough for an individual seeking intervention to base his or her claim on a concern that he or she may be adversely affected in the future, namely, that a qualifying physician would in the future find the Patients to be qualifying patients and that medical cannabis would be beneficial to them. AMM argues that the Trade Association Petitioners have only a generalized interest in medical cannabis and have not demonstrated that this case will cause any special damage different than that to the general public.

AMM also asserts that Petitioners are not entitled to intervention as of right because the Commission adequately represents Petitioners' interests. According to AMM, this

---

circuit court abused its discretion in not allowing permissive intervention. At oral argument, counsel for the Commission advised that the Commission takes no position with respect to the Patients' and the Trade Association Petitioners' request to intervene.

Court has developed an interest-analysis test that analyzes whether the proposed intervenor's interest is similar or identical to that of an existing party. AMM contends that the Commission and Petitioners have the same interest that the Commission is best suited to represent. AMM argues that Petitioners cannot demonstrate a compelling reason to intervene, because the defenses that they have raised are on all fours with the ones that the Commission has raised. AMM asserts that the Commission's representation of Petitioners' interests is not inadequate simply because the Commission and Petitioners are different types of organizations. AMM acknowledges that, "[i]n the abstract, there are multiple different interests held by the Growers and the Commission[,]" but that "[t]hat fact is not dispositive."

AMM contends that, if the circuit court orders a remedy that directly impacts the Growers, the Growers can move to intervene on appeal. AMM argues that the Maryland Declaratory Judgments Act, CJ § 3-405, does not provide a greater right to intervention than that set forth under Maryland Rule 2-214(a)(2). Essentially, AMM asserts that CJ § 3-405 is subject to the same analysis that has been established in case law for Maryland Rule 2-214(a)(2). Finally, AMM contends that the circuit court did not abuse its discretion in denying permissive intervention, because such intervention would have unduly delayed this case and prejudiced AMM.

**The Standard of Review**

An appellate court reviews for abuse of discretion a trial court's denial of a motion to intervene on the ground of untimeliness, where the trial court articulates why the motion was untimely. See Washington Grove, 408 Md. at 65, 968 A.2d at 568. In all other

instances, an appellate court reviews without deference a trial court's conclusion that a party may not intervene as of right. See id. at 65, 968 A.2d at 568-69. An appellate court reviews for abuse of discretion a trial court's decision to deny permissive intervention. See id. at 65, 968 A.2d at 569.

**Intervention as of Right**

Maryland Rule 2-214(a) governs intervention as of right as follows:

Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

In Washington Grove, 408 Md. at 69-70, 968 A.2d at 571-72, this Court explained that Maryland Rule 2-214(a)(2) contains four requirements for intervention as of right, stating:

M[aryland] Rule 2-214[(a)(2)] contains four requirements a person must satisfy in order to intervene as of right: 1) the [motion to intervene] was timely; 2) the person claims an interest relating to the property or transaction that is the subject of the action; 3) the person is so situated that the disposition of the action, as a practical matter, may impair or impede that person's ability to protect that interest; and 4) the person's interest is not adequately represented by existing parties to the suit.

(Citations omitted).

As to the first requirement, timeliness, whether a motion to intervene is timely depends on "the purpose for which intervention is sought, the probability of prejudice to the parties already in the case, the extent to which the proceedings have progressed when the movant [mov]es to intervene, and the reason or reasons for the delay in seeking

- 37 -

intervention." Id. at 70, 968 A.2d at 572 (citation omitted). This Court observed that "[t]imeliness depends upon the individual circumstances in each case, and . . . consideration of those circumstances rests initially with the sound discretion of the trial court, which, unless abused, will not be disturbed on appellate review." Id. at 70, 968 A.2d at 572 (citation omitted).

To satisfy the second and third requirements—a claim of an interest and impairment or impediment to the ability to protect that interest—the person seeking to intervene must show that it has "an interest for the protection of which intervention is essential and which is not otherwise protected." Id. at 75, 968 A.2d at 574-75 (citation and internal quotation marks omitted). In other words, the person seeking to intervene must show that intervention is essential to protect the person's interest. An interest satisfies the second and third requirements where the person seeking to intervene may be bound by a judgment in the case. See id. at 75, 968 A.2d at 575. The person seeking to intervene need not prove, however, that the case's disposition "would be res judicata as to" the person; instead, the person "need merely show that he [or she] might be disadvantaged by the" case's disposition. Bd. of Trs. of Emps.' Ret. Sys. of City of Balt. v. Mayor & City Council of Balt. City, 317 Md. 72, 89 n.19, 562 A.2d 720, 728 n.19 (1989). The standard that this Court has adopted for determining an impairment or impediment to the ability to protect an interest is whether "the disposition of the action would at least potentially impair the [person's] ability to protect [the person's] interest." Washington Grove, 408 Md. at 99, 968 A.2d at 590 (citation and internal quotation marks omitted). That said, "[i]t is not enough for a person seeking intervention to base [his or her] motion on concern that some

future action in the proceedings may affect [the person's] interests adversely." Id. at 75, 968 A.2d at 575. Indeed, "[s]eeking intervention on such a basis is merely speculative and affords no present basis upon which to become a party to the proceedings." Id. at 75, 968 A.2d at 575 (citation and internal quotation marks omitted).

The interest of the person seeking to intervene "must be such that the [person] has standing to be a party"—i.e., "the outcome of the lawsuit might cause the person to suffer some kind of special damage differing in character and kind from that suffered by the general public." Duckworth v. Deane, 393 Md. 524, 540, 903 A.2d 883, 892 (2006) (brackets, citation, ellipsis, and internal quotation marks omitted). Maryland "Rule 2-214(a)(2)'s requirement of an 'interest' in the 'transaction that is the subject of the action,' which may be affected by 'the disposition of the action,' means something more than an applicant's generalized interest in participating in the formulation of a constitutional or legal standard, to which the applicant for intervention may be subjected[.]" Id. at 539, 903 A.2d at 892 (citation, brackets, and some internal quotation marks omitted).

The fourth requirement, inadequate representation by the parties, necessitates "a comparison of the interest asserted by the [person seeking to intervene] with that of each existing party." Washington Grove, 408 Md. at 102, 968 A.2d at 591 (citation and internal quotation marks omitted). "The burden of showing that existing representation may be inadequate is a minimal one." Id. at 102, 968 A.2d at 591 (citation omitted). The person seeking to intervene need not show that existing representation is, in fact, inadequate, or that the person's interests are adverse to existing representation; "[i]t is sufficient that the representation may be inadequate." Id. at 102, 968 A.2d at 591 (citation and internal

- 39 -

quotation marks omitted).

This Court has "adopted the 'interest-analysis' test for determining whether the lack of adequate representation requirement has been met." Id. at 102, 968 A.2d at 591 (citation omitted). We have explained the "interest-analysis" test as follows:

> The cascading test to be applied is: 1) if the proposed intervenor's interest is not represented or advocated to any degree by an existing party, or if the existing parties all have interests which are adverse to those of the proposed intervenor, the intervenor should be permitted to intervene; 2) if the proposed intervenor's interest is similar, but not identical, to that of an existing party, a discriminating judgment is required on the circumstances of the particular case, but the proposed intervenor ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee; 3) if the interest of an existing party and the proposed intervenor are identical, or if an existing party is charged by law with representing the proposed intervenor's interest, a compelling showing should be required to demonstrate why this representation is not adequate.

Id. at 102-03, 968 A.2d at 591 (citation, brackets, and internal quotation marks omitted). Under the interest-analysis test, in relevant part, the person seeking to intervene always satisfies the requirement of inadequate representation where the person's interest "is not represented or advocated to any degree by an existing party[.]" Id. at 102-03, 968 A.2d at 592 (citation omitted). Notably, the person seeking to intervene generally satisfies the requirement of inadequate representation where the person's interest is similar to that of an existing party, but where it is unclear that the party will adequately represent the person's interest. See id. at 103, 968 A.2d at 592 (citation omitted). On the other hand, the person seeking to intervene must make "a compelling showing" to satisfy the requirement of inadequate representation where the person's interest is identical to a party's, or where a party is legally required to represent the person's interest. Id. at 103, 968 A.2d at 592

- 40 -

(citation omitted).

## Permissive Intervention

Maryland Rule 2-214(b) governs permissive intervention as follows:

(1) *Generally.* Upon timely motion a person may be permitted to intervene in an action when the person's claim or defense has a question of law or fact in common with the action.

\* \* \*

(3) *Considerations.* In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.[24]

In the Fourth Edition of the Maryland Rules Commentary, Judge Paul V. Niemeyer,

Linda M. Schuett, and Joyce E. Smithey, address permissive intervention under Maryland

Rule 2-214(b) as follows:

The underlying ground of [permissive intervention] is to promote judicial economy in the litigation process. More practical considerations, however, often play a role. The intervenor may fear, for example, that in his or her absence the court will rule the "wrong" way on an issue that the intervening party may have to litigate later if intervention is not granted.

Maryland Rules Commentary (4th ed. 2014), at 199.

## Declaratory Judgment

CJ § 3-405(a), part of the Maryland Uniform Declaratory Judgments Act, provides:

(1) If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party.

(2) Except in a class action, the declaration may not prejudice the rights of any person not a party to the proceeding.

---

[24]Maryland Rule 2-214(b)(2) governs permissive intervention by governmental entities, and thus is not applicable here.

**Analysis**

Here, we conclude that the Growers were entitled to intervention as of right under Maryland Rule 2-214(a)(2) and that the circuit court erred in denying the Growers' motion to intervene; and, the Growers were entitled to be made a party pursuant to CJ § 3-405(a)(1) and to joinder under Maryland Rule 2-211. We also determine that the circuit court abused its discretion in denying permissive intervention as to the Growers under Maryland Rule 2-214(b). In contrast, we conclude that the circuit court did not err or abuse its discretion in denying intervention as of right or permissive intervention as to the Patients and the Trade Association Petitioners, and that the Patients and the Trade Association Petitioners were not entitled to be made a party under CJ § 3-405(a)(1).

We first address intervention as of right as to the Growers. Relevant case law establishes that intervention as of right under Maryland Rule 2-214(a)(2) is comprised of four requirements: timeliness, a claim of an interest, impairment or impediment to the ability to protect that interest, and inadequate representation by the parties. See Md. R. 2-214(a)(2); Washington Grove, 408 Md. at 69-70, 968 A.2d at 571-72. Given that this analysis involves intervention as of right, we review the issue without deference to the circuit court. See Washington Grove, 408 Md. at 65, 968 A.2d at 568-69.

As to the first requirement, timeliness, the threshold consideration, we are guided by the four factors that we set forth in Washington Grove, 408 Md. at 70, 968 A.2d at 572—(1) the purpose for which intervention is sought; (2) the probability of prejudice to the parties; (3) the extent to which the proceedings have progressed; and (4) the reasons for delay in seeking intervention. We conclude, as did the circuit court, that the Growers'

- 42 -

motion to intervene was timely. Here, the Growers sought to intervene to protect what they described as a direct property interest that would have been impaired or impeded by the action. AMM has not alleged that it was prejudiced by any delay in the filing of the Growers' motion to intervene. Although at the February 21, 2017 hearing, AMM's counsel indicated that AMM did not waive the issue of timeliness, in the opposition to the motion to intervene, AMM did not argue that the motion to intervene was untimely filed. In not raising an issue of timeliness in the opposition to the motion to intervene, AMM necessarily did not allege any prejudicial delay. And, we do not discern the probability of any prejudice to the parties based on the timing of the filing of the motion to intervene.

As to the extent to which the proceedings had progressed, the Growers filed the motion to intervene on December 30, 2016, within two months of AMM's filing of the complaint for declaratory judgment, which was filed on October 31, 2016. At that point, the circuit court had not yet ruled on the Commission's motion to dismiss, or, in the alternative, for summary judgment, which was filed on December 12, 2016. Because the motion to intervene was filed early in the litigation and shortly after the filing of the complaint and the Commission's motion to dismiss, there was no delay in seeking intervention. Indeed, at the February 21, 2017 hearing, the circuit court determined that no argument was necessary on the issue of timeliness and found that the motion to intervene was timely filed. We agree. The motion to intervene was filed less than two months after the filing of the complaint, approximately two weeks after the filing of the Commission's motion to dismiss, and before the filing of an answer.

The second and third requirements necessary for intervention as of right, namely, a

claim of an interest and impairment or impediment to the ability to protect that interest, are also fully satisfied. Throughout the litigation, the Growers have claimed an interest in the form of a direct or vested property right. Indeed, on February 20, 2017, the day before the hearing on the motion to intervene, the Growers submitted three affidavits from owners or members of Curio Cultivation, SunMed Growers, and ForwardGro. In the affidavits, the owners or members averred that, after receiving pre-approvals for medical cannabis grower licenses, the Growers had expended significant amounts of money to prepare to meet the State's regulatory deadline, had contracted for facilities, hired employees, and taken other actions in reliance on their status as pre-approval awardees. After receiving pre-approvals for medical cannabis grower licenses, the Growers had one year in which to become operational. If the Growers failed to do so, their pre-approvals would become subject to rescission by the Commission. See COMAR 10.62.08.06E. From our perspective, the Growers plainly have an interest that intervention is necessary to protect. As required by relevant case law, the Growers have demonstrated that intervention is essential to protect their status as pre-approval awardees and, in one instance, a medical cannabis grower licensee. The Growers have satisfied the statutory pre-approval process—and ForwardGro has been approved for a medical cannabis grower license—and expended significant resources to meet the necessary requirements for becoming fully approved licensed medical cannabis growers. Despite AMM's contentions, it almost goes without saying that

the Growers may be disadvantaged by this case's outcome.[25]

In denying the motion to intervene, the circuit court defined the issue as whether the Commission had administered the relevant statute in a constitutional manner and the circuit court determined that the Growers did not have an applicable interest in the issue. At oral argument, the Commission's counsel contended that the question is whether the Growers have an interest in the transaction that is the subject of the case, not whether the Growers had an interest in the legal issue that is to be decided by the circuit court. The Commission's counsel's view is consistent with case law concerning intervention as of right under Maryland Rule 2-214(a)(2). See Washington Grove, 408 Md. at 69, 968 A.2d at 571 (The second requirement for intervention as of right under Maryland Rule 2-214(a)(2) is that "the person claims an interest relating to the property or transaction that is the subject of the action[.]"). The Growers have consistently claimed an interest in the case by virtue of having been pre-approved for medical cannabis grower licenses. By claiming such an interest, the Growers are obviously claiming an interest in the transaction that is the subject of the action—namely, the Commission's pre-approval process and issuance of medical cannabis grower licenses.

As to any impairment or impediment of the Growers' ability to protect their interest, in the complaint for declaratory judgment, AMM sought an injunction prohibiting the Commission from issuing final approvals for the fifteen businesses, including the Growers,

---

[25]It is not necessary that we address the Growers' contention that they have a "vested" property interest. The circumstance is that the Growers have more than demonstrated that they have an interest in the case that intervention is necessary to protect.

- 45 -

whose applications for medical cannabis grower licenses were pre-approved. AMM also sought an order forcing the Commission to dispense with the existing results of the pre-approval process and to reconduct the pre-approval stage of the medical cannabis grower licensing process taking diversity into account. Obviously, if granted, this relief would potentially impinge upon the Growers' interest in the pre-approval and licensing process, given that the Growers have already been designated as pre-approval awardees and ForwardGro has been granted a medical cannabis grower license. Plainly, the Growers "might be disadvantaged by" this case's disposition, Emps.' Ret. Sys., 317 Md. at 89 n.19, 562 A.2d at 728 n.19, which could affect the Growers' status in the licensing process. See also Washington Grove, 408 Md. at 99, 968 A.2d at 590 ("The standard . . . [i]s whether the disposition of the action would at least potentially impair the [proposed intervenor]'s ability to protect its interest." (Citation and internal quotation marks omitted)). In sum, denial of the motion to intervene and exclusion of the Growers as parties in AMM's request for declaratory judgment would impede the Growers' ability to protect their interest in the pre-approval and licensing process.

No matter how this case proceeds, the Growers have interests that will be at stake. If the circuit court orders the Commission to reconduct the pre-approval stage of the medical cannabis grower licensing process, the Growers will be forced to undergo the process of submitting an application a second time and awaiting the Commission's decision. If, in such a scenario, the Commission decided not to pre-approve the Growers' applications, the Growers would not only lose the opportunity to become licensed medical cannabis growers in Maryland, but also would have forfeited the investments made as a

- 46 -

result of the first pre-approval process. Even if the Commission pre-approved the Growers' applications during a second pre-approval process—which is uncertain, given that the second pre-approval process would necessarily be conducted under different rules—the Growers' interests would be impaired in the interim because of delay and uncertainty as to whether the Growers would be successful during the second pre-approval process.

Finally, the fourth requirement for intervention as of right, inadequate representation by the parties, is satisfied. Obviously, as competitors in the medical cannabis growing industry, the Growers and AMM have interests that are adverse to each other. The real question is whether the Commission adequately represents the Growers' interests. The circumstances of this case make clear that the Commission cannot do so. As Petitioners observe, this conclusion is not a critique of the Office of the Attorney General. Indeed, tellingly, on behalf of the Commission, the Office of the Attorney General candidly advises that it does not adequately represent the Growers' interests. At the risk of stating the obvious, the Office of the Attorney General represents the Commission's interest, not any business's or individual's interest. The Commission has an interest in regulating Maryland's medical cannabis industry while fully comporting with applicable law, and in "implement[ing] programs to make medical cannabis available to qualifying patients in a safe and effective manner." HG § 13-3302(c). As such, the Commission has an interest in licensing qualified medical cannabis growers, but the Commission has no interest in licensing any particular individual medical cannabis grower, as opposed to another. The Commission has an interest in selecting qualified medical cannabis growers and regulating medical cannabis growers; as a result, the Commission,

in actuality, has a conflict of interest with respect to the representation of the Growers in a lawsuit in which the Growers seek to maintain their status as pre-approval awardees and the Commission seeks to assure that the selection process is lawfully implemented. In other words, the Growers' interest is in making sure that they maintain their pre-approval status and receive medical cannabis grower licenses, and the Commission's interest is in assuring that the selection process comports with applicable law. The Growers have an interest in achieving the outcome in which they are the recipients of medical cannabis grower licenses as opposed to other growers; the Commission does not share this interest.

In short, the Growers have easily met the burden of showing that the Commission's representation may be inadequate—which is not a burden to demonstrate that the Commission's representation is, in fact, inadequate. Washington Grove, 408 Md. at 102, 968 A.2d at 591 ("The burden of showing that existing representation may be inadequate is a minimal one." (Citation omitted)). Essentially, under the "interest-analysis" test, the Growers have shown that their interest is not fully represented or advocated by either AMM or the Commission. AMM clearly has interests that are adverse to the Growers. And, the Commission has interests that are not similar to that of the Growers, *i.e.*, the Commission's interest is in conducting the medical cannabis grower licensing process lawfully, whereas the Growers' interest is in protecting their status and investment as pre-approval awardees.

In sum, the Growers were entitled to intervention as of right because the four requirements for intervention as of right under Maryland Rule 2-214(a)(2) were satisfied— the motion to intervene was timely filed, the Growers' have an interest relating to the property or transaction that is the subject of the action, the disposition of the action may

- 48 -

impair or impede the Growers' ability to protect that interest, and the Growers' interest is not adequately represented by the existing parties.[26]

The Growers contend that CJ § 3-405(a)(1) and Maryland Rule 2-211(a) confer indispensable party status on them in a declaratory judgment action.[27] On the other hand,

[26]In light of the conclusion that the Growers were entitled to intervention as of right under Maryland Rule 2-214(a)(2) and, as explained *infra*, to be made parties under CJ § 3-405(a)(1), the Court need not reach whether the Growers were also entitled to permissive intervention. Nonetheless, we also conclude that the circuit court abused its discretion in denying permissive intervention for the Growers. Generally, permissive intervention is warranted where the person seeking to intervene files a timely motion and has a claim or defense with a question of law or fact in common with the case, and where intervention would not unduly delay or prejudice the adjudication of the parties' rights. See Md. R. 2-214(b). Here, all three of these circumstances exist. Petitioners' motion to intervene was timely. The Growers plainly have a claim with questions of law and fact in common with this case. AMM contends that the Commission violated the law with respect to considering racial and ethnic diversity during the medical cannabis grower licensing process. The Growers have a claim that they have a property interest in the case and that their pre-approvals for medical cannabis grower licenses were properly issued under the relevant statutes and regulations. The respective claims involve common questions of law and fact. And, intervention would not unduly delay or prejudice the adjudication of the parties' rights. Although granting permissive intervention could perhaps result in delay, the delay would not be unreasonable or prejudice the adjudication of the parties' rights.

[27]The Growers contend that, in addition to intervention being required under Maryland Rule 2-214(a)(2) and that they are entitled to be made a party under CJ § 3-405(a)(1), Maryland Rule 2-211(a) requires their joinder as parties to the action. In short, as ordered in the July 28, 2017 *per curiam* order, we agree. Maryland Rule 2-211(a), concerning required joinder of parties, provides:

> Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence
>
> (1) complete relief cannot be accorded among those already parties, or
>
> (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

- 49 -

AMM argues that CJ § 3-405(a)(1) "does not provide any greater right to intervention" than the Growers would have under Maryland Rule 2-214(a)(2). Of significance, CJ § 3-405(a)(1) states: "If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party."

Given that this Court has concluded that the Growers are entitled to intervention as of right under Maryland Rule 2-214(a)(2), whether CJ § 3-405(a)(1) provides a basis for the Growers to become a party independent of Maryland Rule 2-214(a)(2) is not dispositive. In other words, if we were to accept AMM's position that CJ § 3-405(a)(1) requires the same analysis as Maryland Rule 2-214(a)(2), the result would be the same, *i.e.*, the Growers would be entitled to be made a party under CJ § 3-405(a)(1), as well as to intervention under Maryland Rule 2-214(a)(2). It is not clear, however, as AMM contends, that case law establishes that being made a party under CJ § 3-405(a)(1) is dependent upon the satisfaction of Maryland Rule 2-214(a)(2).

In <u>Duckworth</u>, 393 Md. at 529-30, 903 A.2d at 886, which predated the Civil

---

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff.

The requirement of Maryland Rule 2-211(a)(2)—that "disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action"—is plainly satisfied for the same reasons that the third requirement for intervention as of right under Maryland Rule 2-214(a)(2), *i.e.*, "the person is so situated that the disposition of the action, as a practical matter, may impair or impede that person's ability to protect that interest[,]" <u>Washington Grove</u>, 408 Md. at 69, 968 A.2d at 571, is satisfied.

- 50 -

Marriage Protection Act, a group of individuals sued the clerks of certain circuit courts who had denied them licenses for same-sex marriages. Eight members of the General Assembly sought intervention as of right and permissive intervention in the lawsuit. See id. at 531, 903 A.2d at 887. In Duckworth, id. at 529, 534, 903 A.2d at 886, 889, this Court held, in pertinent part, that a trial court did not err in denying the motion to intervene that had been filed by the group of legislators, who relied on both Maryland Rule 2-214(a) and CJ § 3-405(a) for intervention as of right. In analyzing the issue of intervention as of right under Maryland Rule 2-214(a)(2), this Court concluded that the legislators failed to satisfy requirements for intervention, namely, that the proposed intervenor "claim an interest in the subject of the action such that the disposition of the action may impair or impede the [proposed intervenor]'s ability to protect that interest[,]" and "that [the] interest might not be adequately represented by existing parties." Id. at 539, 903 A.2d at 891-92. Specifically, the Court determined that the interest of the legislators "in the litigation [wa]s no different from the interest of the general public" and that "[t]hey would be no more affected by an adverse decision than any resident of Maryland." Id. at 540, 903 A.2d at 892. As to CJ § 3-405(a), this Court concluded that the legislators' reliance on the Declaratory Judgments Act was misplaced because the argument was not raised by the legislators in the trial court and thus was not properly preserved for review. Id. at 542, 903 A.2d at 893. This Court noted that, alternatively, "for the reasons set forth above [concerning intervention as of right under Maryland Rule 2-214(a)(2)], the legislators d[id] not have an 'interest which would be affected by the declaration' within the meaning of [CJ] § 3-405(a)(1)[.]" Id. at 542, 903 A.2d at 893. From our perspective, the holding in

Duckworth does not preclude the conclusion that the Declaratory Judgments Act provides a distinct right to intervention other than that set forth under Maryland Rule 2-214(a)(2).[28]

Notwithstanding AMM's position, we conclude that CJ § 3-405(a)(1) provides an independent basis for becoming a party in a declaratory judgment action. In Duckworth, 393 Md. at 542, 903 A.2d at 893, although this Court determined that intervention as of right was not appropriate under Maryland Rule 2-214(a)(2), this Court stated that the legislators did "not have an 'interest which would be affected by the declaration' within the meaning of [CJ] § 3-405(a)(1)[.]" In Duckworth, this Court did not explicitly tie becoming a party, *i.e.*, intervention, under CJ § 3-405(a)(1) to the need to satisfy the four requisites of intervention as of right under Maryland Rule 2-214(a)(2). Both CJ § 3-405(a)(1) and Maryland Rule 2-214(a)(2) require that a party have an interest—under CJ § 3-405(a)(1), "a person who has or claims any interest which would be affected by the declaration[] shall be made a party[,]" and under Maryland Rule 2-214(a)(2) a person must "claim[] an interest relating to the property or transaction that is the subject of the action[,]" Washington Grove, 408 Md. at 69, 968 A.2d at 571. This Court's holding in Duckworth demonstrates that there may be an overlap in analyzing whether an interest exists under CJ

---

[28]In its brief, AMM relies on Montgomery Cty. v. Bradford, 345 Md. 175, 691 A.2d 1281 (1997) and Hartford Ins. Co. v. Birdsong, 69 Md. App. 615, 519 A.2d 219 (1987) to support the assertion that the Declaratory Judgments Act does not provide a greater right to intervention than Maryland Rule 2-214(a)(2). Contrary to AMM's contention, Hartford, 69 Md. App. at 617-19, 519 A.2d at 220-21, involved a personal injury action in which plaintiffs sought damages resulting from an automobile accident. Bradford, 345 Md. at 177-78, 691 A.2d at 1282, on the other hand, involved an action for declaratory judgment; however, the interplay between CJ § 3-405(a) and Maryland Rule 2-214(a)(2) is not discussed in the case.

§ 3-405(a)(1) and Maryland Rule 2-214(a)(2), but the holding does not remotely suggest that Maryland Rule 2-214(a)(2)'s requirements must be satisfied to establish intervention under CJ § 3-405(a)(1).

Indeed, in Duckworth, 393 Md. at 542, 903 A.2d at 893, the Court determined that the issue of intervention under CJ § 3-405(a) was not properly preserved and before the Court for review. Thus, the Court's comment concerning intervention under CJ § 3-405(a), in the context of the issue not being before the Court, was *dicta*. Given the Court's remarks, however, a fair inference is that the Court recognized a separate basis for intervention under CJ § 3-405(a)—tellingly, the Court indicated that the issue was not before the Court, treating it as a separate issue from that of Maryland Rule 2-214(a)(2).

Given that CJ § 3-405(a)(1)'s application is more specific than that of Maryland Rule 2-214(a)(2)—CJ § 3-405(a)(1) applies only to declaratory judgment actions and Maryland Rule 2-214(a)(2) applies to all civil actions—it is logical to conclude that CJ § 3-405(a)(1) provides an independent basis for intervention. Stated otherwise, CJ § 3-405(a)(1) is relevant only in a specific class of cases where declaratory judgment is at issue; in contrast, Maryland Rule 2-214(a)(2) is applicable in any type of civil case in which a person seeks to intervene as of right, *i.e.*, in cases involving contracts, torts, family law matters, and the like. To determine that CJ § 3-405(a)(1) does not provide an independent basis for intervention would render CJ § 3-405(a)(1)'s language that "a person who has or claims any interest that would be affected by the declaration[] shall be made a party" superfluous. Based on a plain reading of CJ § 3-405(a)(1), the ground for intervention under the statute is that a person either has or claims an interest that would be affected by

- 53 -

the declaration sought in the action. In other words, CJ § 3-405(a)(1), by its plain language, does not require satisfaction of all of the requisites of Maryland Rule 2-214(a)(2). Put simply, to warrant intervention under CJ § 3-405(a)(1), a person need only show that they have or claim an interest that would be affected by the declaration. To hold otherwise would be to read into CJ § 3-405(a)(1) language that does not exist. In short, the Growers were entitled to intervention under Maryland Rule 2-214(a)(2) because they satisfied the four requisites, and under CJ § 3-405(a)(1) because they clearly claimed an interest that would be affected by the declaration sought by AMM.[29]

In contrast to our holding with respect to the Growers, we conclude that the circuit court properly denied intervention as of right and permissive intervention as to the Patients and the Trade Association Petitioners. Although Petitioners' motion to intervene was timely filed, the Patients' and the Trade Association Petitioners' interests are too attenuated to satisfy the requirements for intervention as of right under Maryland Rule 2-214(a)(2). The interest claimed by the Patients, who advise that they suffer from epilepsy, is that they assert that, at some point in the future, a qualifying physician will find them to be qualifying patients and prescribe the use of medical cannabis, which may benefit them. The interest claimed by the Trade Association Petitioners is that they advocate for prompt access to medical cannabis, patient rights, and the interests of the Growers. In our view, the

---

[29]We are mindful of Petitioners' claim, made in the motion to dismiss, that this action is not properly brought as a declaratory judgment action and should be treated as a petition for judicial review. Nothing in this discussion about the right to intervene under CJ § 3-405(a)(1) is intended to supercede the circuit court's ability to determine the issue raised in the motion to dismiss on remand.

generalized and theoretical interests claimed by the Trade Association Petitioners and Patients are simply not adequate to satisfy the second requirement for intervention as of right under Maryland Rule 2-214(a)(2), namely, that "the person claims an interest relating to the property or transaction that is the subject of the action[.]" Washington Grove, 408 Md. at 69, 968 A.2d at 571 (citations omitted). The Patients and the Trade Association Petitioners may have an interest in seeing Maryland's medical cannabis industry become operational as soon as possible, but that does not mean that the interest is sufficiently or specifically related to the transaction that is the subject of the action—namely, the Commission's lawful administration of the process utilized in issuing pre-approvals and licenses for medical cannabis growers—to warrant intervention. Although the Patients' and the Trade Association Petitioners' interest may overall be in having the medical cannabis industry becoming operational without undue delay, it cannot be said with any degree of certainty that the outcome of this lawsuit might cause them to incur any kind of special damage differing from that suffered by the general public. See Duckworth, 393 Md. at 540, 903 A.2d at 892.

We also conclude that the Patients and the Trade Association Petitioners do not fulfill the third requirement for intervention as of right under Maryland Rule 2-214(a)(2) because the Patients and the Trade Association Petitioners are not "so situated that the disposition of the action, as a practical matter, may impair or impede th[eir] ability to protect that interest." Washington Grove, 408 Md. at 69, 968 A.2d at 571. As stated, the Trade Association Petitioners' interest is simply in advocating for the advancement of access to medical cannabis; whatever the disposition of the case, the Trade Association

- 55 -

Petitioners' ability to protect their interest will not be impaired or impeded. The Patients' ability to protect their interest is not impaired or impeded by the disposition of the case. At most, the disposition of the case in AMM's favor—which could result in an order that the Commission reconduct the pre-approval process for medical cannabis grower licenses under the provisions of HG § 13-3306(a)(9)(i)1—may result in delaying the date when the medical cannabis industry becomes operational in Maryland; however, the disposition of the case would not mean that medical cannabis would not become available to qualifying patients in Maryland.

Because we conclude that the Patients and the Trade Association Petitioners do not satisfy the second and third requirements for intervention as of right under Maryland Rule 2-214(a)(2), we do not address the fourth requirement, *i.e.*, whether their interests are not adequately represented by existing parties to the action. We also determine that the Patients and the Trade Association Petitioners do not have or claim an interest which would be affected by the outcome of the declaratory judgment action within the meaning of CJ § 3-405(a)(1), and thus they do not qualify for intervention under CJ § 3-405(a)(1). The circuit court correctly denied intervention as of right under Maryland Rule 2-214(a)(2) as to the Patients and the Trade Association Petitioners, and the Patients and the Trade Association Petitioners were not entitled to be made a party under CJ § 3-405(a)(1).

In addition, we conclude that the circuit court did not abuse its discretion in denying permissive intervention to the Patients and the Trade Association Petitioners. We do not discern that the Patients' and the Trade Association Petitioners' claims raise a question of law or fact in common with the action, where the action concerns the constitutionality of

- 56 -

the Commission's process and issuance of pre-approvals for medical cannabis grower licenses, and the Patients' and the Trade Association Petitioners' interests are, as explained, attenuated and generalized interests in having the medical cannabis industry operational in Maryland sooner rather than later. Cf. Simpson v. Consol. Constr. Servs., Inc., 143 Md. App. 606, 636, 795 A.2d 754, 771 (The Court of Special Appeals held that the trial court properly denied permissive intervention and found that there was no question of law or fact in common where the case at issue "involved claims of negligence, professional liability, breach of warranty, and breach of contract arising from [] road failures[,]" and where the proposed intervenors "sought to intervene in that case for an entirely unrelated reason—to enforce their writs of garnishment by challenging the propriety of [a] settlement agreement."), aff'd in part and rev'd in part on other grounds, 372 Md. 434, 813 A.2d 260 (2002).

## II. Remand to the Circuit Court

Having concluded that the circuit court erred in denying intervention as to the Growers, we next address the case's remand to the circuit court, as ordered in the July 28, 2017 *per curiam* order.

In the motion to dismiss in the circuit court, Petitioners raised several issues, including that the doctrine of laches applies and bars AMM's claims, that this is an administrative mandamus action that was untimely filed, and that, if reviewed at all, the action must be considered, not as a complaint for declaratory judgment, but as a request for on-the-record judicial review of the Commission's actions under the substantial evidence test. Specifically, Petitioners contend that the doctrine of laches bars AMM's

claims against the Commission because AMM delayed in filing suit to Petitioners' detriment, and that this Court, on its own, *i.e.*, "*sua sponte*," may address the issue of the applicability of the doctrine of laches. Alternatively, Petitioners request that, should this Court decline to address the issue of the doctrine of laches and dismiss the case, the case be remanded to the circuit court to address the issues raised in the motion to dismiss.

In the Commission's brief, in a footnote, after observing that Petitioners "have requested that the Court remand the action to the circuit court with directions to dismiss the action as barred by laches[,]" the Commission advises that it "agrees" with Petitioners "that the record supports dismissal on the basis of [the doctrine of] laches."

AMM responds that the circuit court did not address the issue as to the doctrine of laches as the motion to dismiss became moot once the circuit court denied Petitioners' motion to intervene, *i.e.*, AMM argues that the issue as to the doctrine of laches is not before this Court because it was not raised in or decided by the circuit court. As to the merits, AMM asserts that its claims against the Commission accrued only once the Commission issued pre-approvals for medical cannabis grower licenses, and not at some earlier time, such as, for example, when the Commission adopted COMAR 10.62.08.05. As such, AMM contends that, for the purpose of assessing the applicability of the doctrine of laches, any delay should be measured from the Commission's August 15, 2016 issuance of pre-approvals. AMM argues that the seventy-seven days between issuance of the pre-approvals and the filing of the complaint was not unreasonable, and that any delay did not prejudice the Growers. As to a remand of the case to consider the issues raised in Petitioners' motion to dismiss, AMM responds that, like the issue as to the doctrine of

laches, the issues as to administrative mandamus and judicial review are not before this Court because the circuit court did not address the issues.

We conclude that a remand of the case to the circuit court with instructions to consider, in the first instance, the issues that Petitioners raised in their motion to dismiss is warranted. Simply put, the circuit court's reasoning for not addressing the arguments raised in Petitioners' motion to dismiss is no longer valid. At the February 21, 2017 hearing, after denying the motion to intervene, the circuit court denied Petitioners' motion to dismiss as moot upon determining that Petitioners were nonparties. Specifically, the circuit court stated: "And those same former proposed intervenors filed a Motion to Dismiss. And again for the same reasons the Court will find the Motion to Dismiss filed in AMM . . . by the proposed intervenors is moot now that they are not parties to this action." In light of our reversal of the circuit court's denial of the motion to intervene as to the Growers, the basis for the circuit court's denial of the motion to dismiss has become a nullity. In other words, because we hold that the Growers were entitled to intervention as of right and that the circuit court erred in denying intervention as of right as to the Growers, the circuit court's rationale for not addressing the merits of Petitioners' motion to dismiss no longer exists. As such, it is appropriate to remand the case to the circuit court for the circuit court to address the merits of the arguments raised in Petitioners' motion to dismiss, including the applicability of the doctrine of laches, whether the action is an action for administrative mandamus, *i.e.*, a petition for judicial review, which was untimely filed, and, if it is not dismissed, whether the complaint should be treated as a petition for judicial review, not a complaint for declaratory judgment, subject to an on-the-record review under

the substantial evidence test.

In addition, we observe that the denial of a motion to dismiss filed by a party would not have been immediately appealable under any theory. For example, in State v. Jett, 316 Md. 248, 251, 558 A.2d 385, 386 (1989), a case involving the State's appeal from the denial of a motion to dismiss a tort claim asserted against it, this Court explained:

> The order denying the State's motion to dismiss is not a final judgment on the merits of the litigation. We have long recognized, however, a narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as final judgments without regard to the posture of the case. For an order to be appealable under the collateral order doctrine it must (1) conclusively determine the disputed question, (2) resolve an important issue, (3) be completely separate from the merits of the action, and (4) be effectively unreviewable on appeal from a final judgment.

(Citations and internal quotation marks omitted). See also City of Dist. Heights v. Denny, 123 Md. App. 508, 514, 519, 719 A.2d 998, 1001, 1003 (1998) (The Court of Special Appeals stated that, "[b]ecause the denial of a motion to dismiss is not a final judgment, it is ordinarily not subject to interlocutory review"; the Court noted, however, that an order may be immediately appealable under the collateral order doctrine.). Here, even if Petitioners had been parties, the circuit court's denial of Petitioners' motion to dismiss as moot would not have been appealable either as an interlocutory order from which an appeal may be noted, as set forth in CJ § 12-303, or under the collateral order doctrine, which requires, among other things, that the order to be appealed conclusively determine the disputed question. Because the circuit court denied the motion to dismiss, reasoning that it was moot by virtue of Petitioners remaining nonparties, the circuit court did not address any of the merits of the motion to dismiss, or rule conclusively one way or the other with

respect to any disputed question.

We will not, *sua sponte*, address Petitioners' argument concerning the applicability of the doctrine of laches. As to the doctrine of laches and when the defense may be raised, in <u>Liddy v. Lamone</u>, 398 Md. 233, 242-43, 919 A.2d 1276, 1282-83 (2007), this Court explained:

> Laches is one of the affirmative defenses recognized and expressly listed in Md. Rule 2-323. Generally, it must be pled, but it can be invoked by a court on its own initiative. *See, e.g.*, *Ipes v. Board of Fire Comm'rs of Baltimore*, 224 Md. 180, 183, 167 A.2d 337, 339 (1961) (recognizing that laches is a proper ground for refusing to issue a writ of mandamus); *Baltimore County v. Glendale Corp.*, 219 Md. 465, 468, 150 A.2d 433, 435 (1959) (noting that, although it is essential to raise the defense of laches in the pleadings, "equity may decline relief for a stale claim after the facts are fully developed"); *Warburton v. Davis*, 123 Md. 225, 231, 91 A. 163, 165 (1914) (recognizing that a court, in a proper case and on its own motion, may refuse to grant relief to a complainant who on the final hearing appears to have been guilty of laches, although the defense was not interposed by the defendant), *citing Syester v. Brewer*, 27 Md. 288, 319 (1867).

(Footnotes omitted). In other words, although ordinarily the doctrine of laches must be pled as an affirmative defense, a court may, on its own initiative, invoke the doctrine of laches where appropriate. Here, Petitioners raised an issue as to the doctrine of laches in the motion to dismiss in the circuit court; we decline to exercise any discretion to instantaneously address the merits of the issue concerning the doctrine of laches where the circuit court has not yet made a determination as to the doctrine's applicability.[30]

_____

[30]To be sure, in <u>Canavan v. Md. State Bd. of Elections</u>, 430 Md. 533, 534, 61 A.3d 828 (2013), in a *per curiam* order, this Court ordered that a trial court's judgment be "affirmed summarily by a unanimous Court on the bases of laches and untimeliness, as discussed in the [trial c]ourt's Memorandum Opinion dated January 22, 2013 and the amended Order dated February 20, 2013." (Footnote omitted). However, it is clear from

As a final point, we note that we do not offer any opinion regarding the merits of the issues that Petitioners raised in their motion to dismiss nor do we offer an opinion as to the merits of the complaint for declaratory judgment, *i.e.*, whether the State properly considered racial and ethnic diversity in the pre-approval process for medical cannabis grower licenses. We simply determine that the Growers are entitled to intervention; and that, as a natural consequence of the reversal of the circuit court's denial of the motion to intervene as to the Growers, the circuit court must examine the motion to dismiss that the circuit court originally denied as moot on the ground that Petitioners (including the Growers) were nonparties.

## III. Conclusion

In sum, we determine that the Growers were entitled to intervention as of right under Maryland Rule 2-214(a)(2), to be made a party under CJ § 3-405(a)(1), and to joinder under Maryland Rule 2-211(a), and that the circuit court abused its discretion in denying permissive intervention as to the Growers. In contrast, we conclude that the circuit court did not err or abuse its discretion in denying intervention as of right or permissive intervention as to the Patients and the Trade Association Petitioners, and that the Patients and the Trade Association Petitioners were not entitled to be made a party under CJ § 3-405(a)(1). We determine that the circuit court is to address, in the first instance, the issues raised in Petitioners' motion to dismiss, which was denied as moot on the basis of the

---

the language of the *per curiam* order that the trial court in that case had discussed and decided the issue of the applicability of the doctrine of laches, and that this Court was not deciding the matter in the first instance and summarily disposing of the case on the basis of the doctrine of laches without the benefit of the trial court's reasoning.

circuit court's erroneous denial of the motion to intervene as to the Growers. Thus, for these reasons, on July 28, 2017, we issued the *per curiam* order: (1) reversing the circuit court's judgment with respect to the denial of intervention of the Growers and remanding the case to the circuit court with instructions to grant intervention as of right to the Growers; (2) affirming the circuit court's judgment with respect to the denial of intervention of the Patients and the Trade Association Petitioners; (3) remanding the case to the circuit court for further proceedings including determination of the issue of the applicability of the doctrine of laches; (4) lifting the stay issued by this Court on June 2, 2017; and (5) ordering that costs in this Court and the Court of Special Appeals be paid 50% by AMM, 25% by the Coalition for Patient Medicinal Access, and 25% by the Maryland Wholesale Medical Cannabis Trade Association.